UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

STEPHANIE HESTER, *et al.*                                                                   Plaintiffs

v.                                                                                Case No. 3:24-cv-639-RGJ

PARK COMMUNITY CREDIT UNION,
INC.,                                                                                Defendant

\* \* \* \* \*

**MEMORANDUM OPINION & ORDER**

Plaintiff Stephanie Hester ("Hester"), as well as opt-in Plaintiffs Leigh Ann Highbaugh ("Highbaugh") and Brittany Richardson ("Richardson") (collectively, "Plaintiffs"), move for an order allowing court authorized notice of this action to be sent to potential opt-in plaintiffs informing them of their right to opt in to this case under the Fair Labor Standards Act, 29 U.S.C. § 216(b) ("FLSA"). [DE 24]. Defendant Park Community Credit Union, Inc. ("PCCU") responded [DE 31] and Plaintiffs replied [DE 32]. PCCU moves for leave to file a sur-reply. [DE 36]. Plaintiffs responded [DE 39] and PCCU replied [DE 40]. These matters are ripe for adjudication. For the reasons below, the Court **GRANTS** Plaintiffs' Motion for Court-Authorized Notice Pursuant to 29 U.S.C. § 216(b) [DE 24] and **DENIES** PCCU's Motion for Leave to File Sur-Reply [DE 36].

**I.**     **BACKGROUND**

PCCU operates a Community Development Financial Institution ("CDFI") and offers a variety of loan products, including auto loans, personal loans, mortgages, and business loans. [DE 24 at 100]. PCCU employs mortgage loan originators ("MLOs"), commercial loan originators ("CLOs"), and consumer loan originators. [DE 24 at 100, n.3]. During the relevant period, PCCU classified MLOs and CLOs as FLSA-exempt on the basis that they are "Outside Sales" positions.

1

[*See, e.g.*, DE 26-2 at 344]. Plaintiffs, former MLOs employed by PCCU, brought this action alleging that they and similarly situated loan originators were misclassified as salaried exempt employees and, therefore, did not receive overtime pay for hours they worked over 40 in a workweek, in violation of FLSA, as well as the Kentucky Wages and Hours Act ("KWHA"), and the Indiana Minimum Wage Law ("IMWL"). [DE 1].[1]

Pursuant to *Clark v. A&L Homecare & Training Ctr., LLC.*, 68 F.4th 1003 (6th Cir. 2023), the parties agreed to conduct limited discovery relevant to the issue of whether the putative collective are similarly situated under *Clark*. [DE 18 at 77; DE 20].

> All of [PCCU's] current and former loan originators who at any time after November 5, 2021: (1) were classified as exempt under the FLSA based on the Outside Sales exemption; and (2) were not paid one and one-half times their regular hourly rate for hours worked in excess of 40 hours per week.

[DE 24 at 92].

## II. DISCUSSION

**A. PCCU's Motion for Leave to File Sur-Reply**

The Court first addresses PCCU's motion for sur-reply, as the arguments in it are relevant to Plaintiff's motion. Whether to permit a party to file a sur-reply is a matter left to the trial court's discretion. *Key v. Shelby Cnty.*, 551 F. App'x 262, 264 (6th Cir. 2014) (citing *Eng'g & Mfg. Servs., LLC v. Ashton*, 387 F. App'x 575, 583 (6th Cir. 2010)); *Tanielian v. DaimlerChrysler Corp.*, 108 F. App'x 386, 387 (6th Cir. 2004). "Although the Federal Rules of Civil Procedure do not expressly permit the filing of sur-replies, such filings may be allowed in the appropriate circumstances, especially '[w]hen new submissions and/or arguments are included in a reply brief, and a nonmovant's ability to respond to the new evidence has been vitiated.'" *Seay v. Tennessee Valley*

---

[1] Hester initiated this action on November 5, 2024. [DE 1]. Richardson and Highbaugh filed consents pursuant to 29 U.S.C. § 216(b) to join this action. [DE 9].

*Auth.*, 339 F.3d 454, 481 (6th Cir. 2003). "As many courts have noted, '[s]ur-replies. . . are highly disfavored, as they usually are a strategic effort by the nonmoving party to have the last word on a matter.'" *Liberty Legal Found. v. Nat'l Democratic Party of the USA, Inc.*, 875 F. Supp. 2d 791, 797 (W.D. Tenn. 2012) (quoting *In re Enron Corp. Sec.*, 465 F. Supp. 2d 687, 691 n.4 (S.D. Tex. 2006)) (additional citation omitted). "The Sixth Circuit has held that a district court does not abuse its discretion in denying leave to file a sur-reply where the opposing party's reply did not raise any new legal arguments or introduce new evidence." *Id.*; *see, e.g.*, *Key*, 551 F. App'x at 265 (holding that district court's denial of motion to file sur-reply was not abuse of discretion due to lack of new arguments raised in reply and six-month delay between filing of reply and motion for sur-reply).

PCCU argues a Sur-Reply is necessary to address new evidence in Plaintiffs' Reply in Support of her Motion for Court-Authorized Notice Pursuant to 29 U.S.C. § 216(b) [DE 32 (hereinafter, the "Reply")]. [*See* DE 36 at 657–58]. Specifically, PCCU claims that a sur-reply is warranted because Plaintiffs introduced in their Reply, for the first time, two exhibits consisting of the following evidence: (1) Hester's July 21, 2025 Declaration [DE 32-3 ("Exhibit 2")]; and (2) performance evaluations for MLOs [DE 32-1 ("Exhibit 1")]. [*See* DE 36 at 658 (addressing the "Reply Exhibits")]. Both Reply exhibits relate to whether MLOs and Commercial Loan Originators ("CLOs") are "similarly situated" as required under *Clark*, 68 F.4th 1003. According to PCCU, Hester's declaration constitutes "inadmissible hearsay" and is inconsistent with Hester's deposition testimony. [DE 36 at 657–58]. Further, PCCU argues that the fact that MLO performance evaluations are similar to the CLO performance evaluations "does not demonstrate that CLOs and MLOs are 'similarly situated.'" [*Id.* at 658]. Accordingly, because PCCU was not afforded an opportunity to make these arguments in its response brief [DE 31], PCCU "requests

3

that the Court grant it leave to file a sur-reply . . . addressing Exhibits 1 & 2 . . . and any and all related arguments set forth in that Reply. [*Id.* at 659]. PCCU did not file a proposed sur-reply.

Plaintiffs deny that any "new arguments" were raised in the Reply. [DE 39 at 671]. Apparently conceding that Reply Exhibits introduced "new evidence," Plaintiffs request that the Court "exercise its discretion to consider [PCCU's] already-made arguments about the weight to be given the Reply Exhibits in its Motion for Leave," but deny PCCU's request to consider arguments PCCU could have raised unrelated to the Reply Exhibits and for leave to file a "further sur-reply." [DE 39 at 670].

In reply, PCCU clarifies that the sur-reply would be limited to addressing issues related to the Reply Exhibits. Specifically, PCCU would argue that "the evaluations do not demonstrate that CLOs and MLOs were 'similarly situated,'" and that Plaintiffs "fail[] to address (or explain) the inconsistency between [Hester's] deposition testimony and her new declaration offered in support of her reply brief." [DE 40 at 675]. PCCU has further offered to forgo filing a separate sur-reply if the Court finds the current briefing "sufficient to assess whether to consider" the Reply Exhibits. [*Id.* at 676].

The Court finds PCCU's arguments raised in its motion worthy of consideration but does not find additional briefing is necessary. PCCU's motion provides sufficient clarity on the issues PCCU sought to address with a sur-reply such that the Court may weigh the Reply Exhibits appropriately. For instance, as discussed further below, the Court finds that Hester's July 21, 2025 Declaration is entitled to little or no weight to the extent it contradicts her prior testimony or relies exclusively on hearsay. And the Court accepts PCCU's assertion that "Plaintiff offers no context or citation to deposition testimony explaining [the CLO evaluations]" as true. [*Id.* at 675].[2]

---

[2] For the avoidance of doubt, neither of the Reply Exhibits are necessary to the Court's disposition of Plaintiffs' motion.

Accordingly, the Court will consider PCCU's rebuttal arguments with respect to the Reply Exhibits addressed in the briefing but will **DENY** PCCU's Motion for Leave to File Sur-Reply [DE 36].

### B. Court-Facilitated Notice

The FLSA permits plaintiffs to "litigate federal minimum-wage and overtime claims on behalf of other 'similarly situated' employees." *Clark*, 68 F.4th at 1007 (quoting 29 U.S.C. § 216(b)). But, pursuant to § 216(b), "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." Thus, "unlike a Rule 23 class action, an FLSA collective action is not representative—meaning that 'all plaintiffs in an FLSA action must affirmatively choose to become parties by opting into the collective action.'" *Clark*, 68 F.4th at 1009 (quoting *Canaday v. Anthem Cos.*, 9 F.4th 392, 402 (6th Cir. 2021)). Potential plaintiffs typically "come to learn about the existence of an FLSA suit" via court-facilitated notice. *Id.* at 1007. In *Clark*, the Sixth Circuit adopted a standard for "the showing . . . that is necessary for a district court to facilitate notice." *Id.*

Under the standard adopted in *Clark*, "for a district court to facilitate notice of an FLSA suit to other employees, the plaintiffs must show a 'strong likelihood' that those employees are similarly situated to the plaintiffs themselves." *Id.* at 1011. This "standard requires a showing greater than the one necessary to create a genuine issue of fact, but less than the one necessary to show a preponderance." *Id.* "Whether other employees are similarly situated for the purpose of joining an FLSA suit typically depends on whether they performed the same tasks and were subject to the same policies—as to both timekeeping and compensation—as the original plaintiffs were." *Id.* at 1010 (citing *Pierce v. Wyndham Resorts, Inc.*, 922 F.3d 741, 745-46 (6th Cir. 2019)).

"Whether other employees are subject to individualized defenses—such as an employee's agreement to arbitrate a claim—can also affect whether particular employees are similarly situated for purposes of sending notice." *Id.* (citing *Pierce*, 922 F.3d at 725).

Additionally, "[p]laintiffs are similarly situated when their claims are 'unified by common theories of defendants' statutory violations,' such as 'a single, FLSA-violating policy.'" *Gifford v. Northwood Healthcare Grp., LLC*, No. 2:22-CV-4389, 2023 WL 5352509 at *3 (S.D. Ohio Aug. 21, 2023) (quoting *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 585 (6th Cir. 2009)). *See also Curry v. Bostik, Inc.*, No. 3:22-CV-370-DJH-CHL, 2025 WL 2054365, at *2 (W.D. Ky. July 22, 2025) (finding facilitation of notice was appropriate where the plaintiff presented evidence that all potential opt-in plaintiffs were subject to the same "challenged policies").

Here, Plaintiffs argue that the putative collective are "similarly situated" because their claims are unified by common theories of PCCU's FLSA violations. Specifically, Plaintiffs contend that PCCU violated FLSA rights of CLOs and MLOs by

> (1) classifying them as exempt under the Outside Sales exemption; (2) doing nothing to track or verify whether the basis of the exemption actually exists despite having the burden of proving such exemption; and (3) failing to pay them overtime compensation.

[DE 24 at 115–16]. In other words, Plaintiffs argue the putative collective all have claims arising from PCCU's common policy to improperly classify CLOs and MLOs as outside salespersons.

In response, PCCU argues that Plaintiffs have failed to produce evidence sufficient to establish a "strong likelihood" that CLOs and MLOs are "similarly situated," as required under *Clark*. [DE 31 at 475]. First, PCCU contends that Plaintiffs, as former MLOs, cannot show that CLOs are subject to the same policies. [*Id.* at 477]. Second, PCCU asserts that the tasks performed by MLOs and CLOs are "entirely distinct." [*Id.* at 478]. As a result, PCCU claims Plaintiffs cannot

demonstrate the putative collective "performed the same tasks and were subject to the same policies." *Clark*, 68 F.4th at 1010.

PCCU's arguments largely miss the mark, however, to the extent they suggest that Plaintiffs needed to demonstrate that the CLOs and MLOs positions were subject to identical policies and performed the same tasks. Although these are important factors, Courts in this circuit recognize that notice may be appropriate even "where the employees' job duties and their titles differed substantially," so long as the named plaintiff can show that they were "subject to the same general corporate policies." *Marcum v. Lakes Venture, LLC*, No. 3:19-CV-00231-GNS-LLK, 2020 WL 6887930, at *3 (W.D. Ky. Nov. 24, 2020) (citing *Bassett v. Tenn. Valley Auth.*, No. 5:09-CV-39, 2013 WL 665068 (W.D. Ky. Feb. 22, 2013)). Plaintiffs in this case need not show that CLOs and MLOs were subject to identical policies because it is undisputed that both positions were subject to the same policy out of which Plaintiffs' claims arise. Namely, both CLOs and MLOs were uniformly categorized as exempt under the outside sales exception.[3]

It is not enough, of course, to show that CLOs and MLOs were subject to the same policy. Rather, Plaintiffs must demonstrate a strong likelihood that they were subject to the same general policy *and* that the application of the policy would give rise to similar FLSA claims. That's because "the very point of the 'similarly situated' inquiry is to determine whether the merits of other-employee claims would be similar to the merits of the original plaintiffs' claims—so that collective litigation would yield 'efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity.'" *Clark*, 68 F.4th at 1012. *See also Foley v. Wildcat Invs.*, LLC, No. 2:21-CV-5234, 2023 WL 4485571, at *3 (S.D. Ohio July 12, 2023)

---

[3] As other courts have recognized, such an "overarching classification serves as evidence of a common policy with regard to the members of that classification—one that may violate the law." *Provencher v. Bimbo Bakeries USA, Inc.*, 2024 WL 5197291, at *8 (D. Vt. Apr. 2, 2024) ("While this may be perfectly innocuous, it is a shared characteristic relevant to the ultimate FLSA determination.").

("Similarly situated opt-ins 'are those whose causes of action accrued in approximately the same manner as those of the named plaintiff.'").

After reviewing the evidence submitted, the Court finds that Plaintiffs have shown a strong likelihood that they are similarly situated with the potential CLO and MLO opt-ins. Each Plaintiff submitted affidavits attesting that based on their personal experience, they "believe the other [CLOs and MLOs] generally worked leads and developed business in a similar way to how [they] worked leads and developed business," meaning there was little "outside sales activity." [*See, e.g.*, DE 24-11 at 294]. Hester's discovery responses indicate she only spent "spent 1 or 2 weeks [per year] working outside her home or outside [PCCU's] headquarters or branches." [DE 24-6 at 233]. Similarly, Highbaugh "estimates in an average year, she spent 5-10% of her time working" outside her home or PCCU's office(s), [DE 24-7 at 239], while Richardson stated she spent "less than 10%" doing the same. [DE 24-8 at 245]. Lastly, each MLO Plaintiff submitted testimony evidence that they were required to work in excess of 40 hours per week. [*See, e.g.*, DE 24-11 at 293]. And, as discussed below, there is evidence that CLOs also worked in excess of 40 hours per week. This evidence demonstrates a strong likelihood that CLOs and MLOs were subject to the same FLSA-violating policy because they were improperly classified as exempt.

To resist this conclusion, PCCU contends that "PCCU had different and unique expectations and goals for [the CLO and MLO] roles" and that "the *application* of the [outside sales] classification was different." [DE 477–78 (emphasis in original)]. PCCU claims that the roles differed across a laundry list of employment "aspects," including the type of borrower serviced, the information required for each loan application, the product sold, the applicable financial regulations, how clients are solicited, post-loan monitoring, software utilized, and the physical location of their respective departments. [*Id.* at 478–79].

8

However, the Court is unpersuaded that the differences PCCU points to meaningfully alters whether potential CLO opt-ins are similarly situated to the MLO Plaintiffs for purposes of the of the policy at issue. Regardless of "any day-to-day differences between the potential plaintiffs' specific job duties," the relevant inquiry is whether there are sufficient "similarities to provide an adequate 'degree of fairness' and a minimal 'procedural impact' to justify moving forward with notifying the other employees." *Markle v. Senior Vill. Mgmt., LLC*, No. 2:22-CV-03420, 2024 WL 3489991, at *5 (S.D. Ohio July 18, 2024) (quoting *O'Brien*, 575 F.3d at 584). Yet aside from PCCU's claim that "MLOs and CLOs have different job expectations and goals . . . related to entertainment and the solicitation of business," [*id.*], none of the differences listed by PCCU are relevant to whether the exempt classification of CLOs was improper. PCCU offers no evidence to affirmatively rebut Plaintiffs' assertion that CLOs, like MLOs, engaged in little outside sales activity. PCCU cites only a declaration stating that the "goals related to the solicitation of business" and the "goals that were set for [CLOs] related to consummating sales" were not the same as the goals applicable to mortgage loan originators. [DE 31-5 at 615]. Without more, this is not enough to rebut "the other evidence that the improper [exempt classification] extended to coworkers in varying positions." *Markle*, 2024 WL 3489991, at *5.

Alternatively, PCCU argues that Plaintiffs' evidence should be rejected because they have "no personal knowledge of whether MLOs performed the same tasks or were subject to the same polices, which alone is fatal to their Notice Motion." [DE 31 at 480]. PCCU cites courts in this circuit which have held that affidavits from plaintiffs are properly considered only where they "allege facts sufficient to support an inference that [they have] actual knowledge about other employees' job duties, pay structures, hours worked, and whether they were paid for overtime hours." *Foley*, 2023 WL 4485571, at *3 (citing *O'Neal v. Emery Fed. Credit Union*, No. 1:13-CV-

9

22, 2013 WL 4013167, at *8 (S.D. Ohio Aug. 6, 2013)). In *Foley*, for example, the court rejected the plaintiff's declaration because it was based solely "discussions he had with unnamed drivers at unknown times" and because the plaintiff had "no knowledge or information as to the pay practices at any other [defendant's] store location." 2023 WL 4485571, at *3.

Unlike the plaintiff in *Foley*, however, Plaintiffs in this case have submitted additional documentary evidence in support of their affidavits which show that the roles of both loan originators were similar. Plaintiffs submitted written job descriptions for both CLOs and MLOs that were substantially similar, including "performance expectations" that were "identical," the "same educational background" requirement, "virtually identical" skills requirements, and similar performance evaluations.[4] [*See* DE 32 at 626 (citing exhibits)]. It is therefore plausible that the CLOs' employment practices also mirrored Plaintiffs' in relevant aspects, such as the expectation that certain business would be conducted outside the "'core' credit union hours, which were from 9:00 AM-5:00 PM Monday through Thursday, and from 9:00 AM-6:00 PM on Friday." [DE 24-11 at 293]. Moreover, Plaintiffs affidavits are based on their "personal observations at headquarters or branches, group emails regarding assignment of MVP leads, general comments from coworkers, and [their] understanding of the loan origination processes workflow." [*See, e.g.,* DE 24-11 at 294]. Post-*Clark* courts have held that "facts such as first-hand observations or observations with co-workers will typically be enough to show that a similarly situated class of employees exists." *Jenkins v. EVO Servs. Grp., LLC*, No. 2:23-CV-01874, 2023 WL 8185965, at *2 (S.D. Ohio Nov. 27, 2023) (quoting *O'Neal*, 2013 WL 4013167, at *8) (cleaned up).

---

[4] PCCU is correct that the evaluations, alone, "do not demonstrate that CLOs and MLOs were 'similarly situated.'" [DE 40 at 675]. And the Court accepts as true PCCU's assertion that "Plaintiff offers no context or citation to deposition testimony explaining" the CLO evaluations. [*Id.*] However, the Court finds the similarities between the two documents speak for themselves. Taken together with the similarities in the loan originator job descriptions, testimonial evidence of the meaning of the evaluation forms is not necessary for the Court's determination at this stage.

It is true, as PCCU notes, that during Plaintiffs' depositions, counsel for PCCU elicited conflicting testimony about Plaintiffs' knowledge of other loan originator's roles. [*See, e.g.,* DE 31 at 483–84 (citing transcripts)]. For example, Hester testified that she didn't "know exactly how many hours other [MLOs] worked in a given week," as well as most other CLOs. [DE 31-4 at 609 (Tr. at 91:3–7, 12–18)].[5] The inconsistencies in Plaintiffs' testimonial evidence mean that the Court must afford Plaintiffs' affidavits less weight, in particular with respect to factual assertions regarding the role of CLOs. Even so, the Court finds that the unrebutted portions of the affidavits and the documentary evidence submitted are enough to carry Plaintiffs' burden at this stage. *See Clark*, 68 F.4th at 1011 (describing plaintiff's burden as "greater than the one necessary to create a genuine issue of fact, but less than the one necessary to show a preponderance").

PCCU's remaining arguments are similarly unavailing. The fact that the Court must "analyze . . . for each and every individual plaintiff (opt-in or otherwise), whether . . . they were properly classified as exempt," does not alter the Court's conclusion that the putative collective is similarly situated to Plaintiffs. [DE 31 at 486 (emphasis omitted)]. The Sixth Circuit has held that plaintiffs are similarly situated where "their claims [a]re unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *O'Brien*, 575 F.3d at 585. Nor, at this stage, do the differences alleged between the current Plaintiffs suggest that they are not similarly situated to other MLOs. Even if Richardson

---

[5] In contrast, Hester did state that she knew the work schedule of at least one CLO because her husband is employed by PCCU as a CLO. [*See id.* ("I know as far, as my husband is concerned, how – how often he works. . . . [W]e worked together for many years, and they have the same 9:00 to 5:00 expectation.")]. And Hester's July 21, 2025 Declaration further states that Hester observed her husband work in excess of 40 hours per week and he is not compensated at an overtime rate. [DE 32-2 at 641]. Nevertheless, the Court will disregard for the purposes of this decision the portion of Hester's Declaration "[b]ased on discussions with [her husband]," namely her assertion that "he spent very little time engaged in sales activities out in the community outside of Park Community's branches and headquarters." [*Id.*]. Not only was this raised for the first time as an exhibit to her Reply, but it is based solely on hearsay.

were a "highly compensated employee," PCCU's argument suggests that she is the exception, not the rule. [DE 31 at 485 ("The Court must analyze for her—and her alone—whether she could be exempt as a highly-compensated employee.")]. In the event that individual differences do overcome the similarities between Plaintiffs and other opt-ins, PCCU "will have another bite at the apple to rebut this at the certification stage." *Markle*, 2024 WL 3489991, at *5.

Accordingly, the Court concludes that Plaintiffs have carried their burden of showing a "strong likelihood" that they and other potential opt-ins are similarly situated, even if not identically situated. *Clark*, 58 F.4th at 1011.

### C. Plaintiffs' Proposed Notice

PCCU lodges two objections to Plaintiffs' proposed notice: (1) that they propose six different methods of communication; [DE 31 at 489]; and (2) that "the Proposed Notice is silent with respect to any information about potential opt-ins' responsibility for PCCU's costs if PCCU prevails." [*Id.*].

The Court addresses each issue below.

#### 1. Notice may be sent by mail and e-mail.

The Court finds that sending notice by regular mail and email is appropriate. This is consistent with other courts in this circuit. *See, e.g., Tate v. Bimbo Bakeries USA, Inc.*, No. 218CV02315MSNTMP, 2019 WL 13156689, at *7 (W.D. Tenn. June 24, 2019) (ordering email and mailed notices); *Pop v. Permco, Inc.*, No. 5:19-CV-00659, 2019 WL 4154480, at *5 (N.D. Ohio Sept. 3, 2019) (same); *Gifford*, 2023 WL 5352509, at *6 (observing trend "to allow notice by mail and email to ensure that putative class members receive notice of the pending action"). "By allowing e-mail notice to former employees now, the Court hopes to avoid the added step of having to resend notice in the event that a former employee's last known home address proves to

be inaccurate." *Lutz v. Huntington Bancshares, Inc.*, No. 2:12-cv-01091, 2013 WL 1703361, at *7 (S.D. Ohio Apr. 19, 2013).[6]

The Court declines at this time, however, to authorize the additional forms of notice requested by Plaintiffs, including reminder notices. *See Fenley v. Wood Grp. Mustang, Inc.*, 170 F. Supp. 3d 1063, 1074–75 (S.D. Ohio 2016) ("[T]he Court should be hesitant to authorize duplicative notice because it may unnecessarily 'stir up litigation' or improperly suggest the Court's endorsement of Plaintiff's claims."). Simply put, Plaintiffs have not shown that additional notices are reasonable under the circumstances. If it appears that additional notices are required, Plaintiffs may move for them at a later date.

**2. The Notice should include language regarding potential costs.**

The district courts in this circuit are split on whether a notice to potential opt-in plaintiffs should include language advising those individuals that they may be required to bear some of the costs if they do not prevail. On the one hand, a number of district courts have found such language to be necessary to allow potential opt-in plaintiffs to make an informed decision on whether to opt-in. *See Heaps v. Safelite Sols., LLC*, No. 2:10-cv-729, 2011 U.S. Dist. LEXIS 40089, at *21, 2011 WL 1325207, at *8 (S.D. Ohio Apr. 5, 2011); *Fenley*, 170 F. Supp. 3d at 1075; *York v. Velox Express, Inc.*, 524 F. Supp. 3d 679, 693 (W.D. Ky. 2021); *Campbell v. Mid. Kentucky Cmty. Action P'ship, Inc.*, 540 F. Supp. 3d 717, 723-24 (E.D. Ky. 2021). Other courts within this district have recognized that including such language "may improperly dissuade putative class members from opting-in to the lawsuit." *Farmer v. LHC Grp., Inc.*, No. 2:20-cv-3838, 2020 U.S. Dist. LEXIS 239097, at *18, 2020 WL 7416946, at *7 (S.D. Ohio Dec. 18, 2020); *see also Abner v. Convergys*

---

[6] As set forth in the Order below, if the United States Postal Service returns a Notice as undeliverable, Plaintiffs may resend the Notice only if the potential opt-in has not already responded to Plaintiffs' email communication.

*Corp.*, No. 1:18-cv-442, 2019 U.S. Dist. LEXIS 62597, at *19, 2019 WL 1573201, at *7 (S.D. Ohio Apr. 11, 2019); *Hall v. U.S. Cargo & Courier Serv., LLC*, 299 F. Supp. 3d 888, 898 (S.D. Ohio 2018).

While the Court certainly understands Plaintiffs' trepidation regarding the chilling affects such language may have, it is equally important that potential opt-in plaintiffs are fully apprised of all the consequences of joining the action so that they may make an informed decision. Therefore, the Notice must apprise opt-in plaintiffs that, if they decide to opt-in to this suit, they may be required to pay PCCU costs if PCCU prevails, but that the costs would not include attorney's fees. *Fegley v. Higgins*, 19 F.3d 1126, 1135 (6th Cir. 1994) (stating "FLSA does not provide for plaintiffs to pay attorney fees to defendants").

The Court orders the parties to convene and confer on a mutually agreeable collective action notice and submit the agreement to the Court for approval within **fourteen (14) days** of this Order.

### III.   CONCLUSION

For all these reasons, and the Court being otherwise sufficiently advised, **IT IS ORDERED** that Plaintiffs' Motion for Court-Authorized Notice Pursuant to 29 U.S.C. § 216(b) [DE 24] is **GRANTED** and PCCU's Motion for Leave to File Sur-Reply [DE 36] is **DENIED**:

1. The Court hereby authorizes notice to be sent as provided in this Order to all persons employed by PCCU as a "Real Estate Loan Originator II – Outside Sales," "Real Estate Loan Originator I – Outside Sales," "Commercial Loan Originator I," and/or "Commercial Loan Originator II" since November 5, 2021 (hereafter, the "Employees" and each an "Employee").

2. The Parties **SHALL** convene and confer on a mutually agreeable collective action notice and submit the agreement to the Court for approval within **fourteen (14) days** of this Order.

3. Within **ten (10) days** of the Court's final approval of the agreeable collective action notice (the "Approved Noticed"), PCCU shall provide to Plaintiffs by email, a spreadsheet in Microsoft Excel Format containing the following information for each Employee: (a) last name, (b) first name, (c) email address with PCCU, if still employed, or, if no longer employed, the last known personal email address, and (e) last known mailing address. If PCCU does not have one or more of these categories of information for a particular person, PCCU shall so certify in the spreadsheet.

4. Within **ten (10) days** of Plaintiffs' receipt of the information from PCCU, Plaintiffs shall cause the Approved Notice to be sent to each person listed by PCCU.

5. The Notice shall be sent as follows: (A) once by first class non-certified United States mail to the last known mailing address, and (B) on the same day, by email to the email address provided by PCCU.

6. The mailing containing the Notice shall also contain a copy of the Consent to Become Party Plaintiff form resembling in all respects the consent forms filed thus far in this action at [DE 9 (hereafter "Consent Form")].

7. The email(s) for each Employee shall be from Plaintiffs' counsel's email address (MFoster@MarkNFoster.com or Sasha@SKClassactions.com) and shall have the title "Court Approved Notice in *Stephanie Hester v. Park Community Credit Union, Inc.*." The email shall contain the text of the Notice in the body of the email. The email shall also separately attach a PDF copy of the Consent Form (the title of the PDF document shall be "Consent Form").

8. Plaintiffs shall provide to PCCU's counsel by email within three days of the initial Notice a copy of the initial Notice, as sent.

9. If the United States Postal Service returns notices to Plaintiffs' counsel indicating that the United States Postal Service cannot deliver the mailing, as addressed, and Plaintiffs' counsel has not received email communication from the employee in response to any email sent to the employee, the following shall occur:
    a. Plaintiffs' counsel shall within three days inform PCCU by email that the mailing has been returned. PCCU shall then review its information for the employee at issue and PCCU's counsel shall then, within three days of Plaintiffs' email, notify Plaintiffs' counsel of any other mailing

      address or addresses, or email address or addresses, that PCCU has for the person in question or notify Plaintiffs' counsel that the contact information previously provided is the only contact information PCCU has for the person in question. Plaintiffs' counsel shall, if PCCU identifies one or more mailing address or addresses, or email address or addresses, re-send the Notice to said new mailing address or addresses, or email address or addresses, within three days of receiving the new contact information from PCCU and shall inform PCCU's counsel by email within three days of such re-sending that Plaintiffs' counsel has done so.

   b. If the notation from the United States Postal Service indicates another address which may be used to send mail to the person in question, Plaintiffs shall re-send the notice to said address within three days of receiving the mailing back from the United States Postal Service and shall inform PCCU's counsel that Plaintiffs' counsel by email within three days of such re-sending Plaintiffs' counsel has done so.

   c. If PCCU states that PCCU has no other address for the person in question and the notification from the United States Postal Service does not include any other address which may be used to send mail to the person in question, Plaintiffs may, within ten days of receiving such mailing back from the United States Postal Service, resend the mailing to such additional address as Plaintiffs is able to determine utilizing internet searching and/or person location information services, and shall inform PCCU's counsel by email within three days of such re-sending that Plaintiffs' counsel has done so.

   d. In the event that the initial mailing and a subsequent mailing are returned with respect to a particular person, Plaintiffs' counsel and PCCU's counsel shall confer in good faith to determine whether there are other possible and reasonable methods for Plaintiffs to provide the Notice to such individuals and, if so, utilize such methods. If the parties, after conferring, cannot agree on whether a particular method should be used, either party may file a motion relating to the disputed issue.

10. Plaintiffs shall file all Consent Forms received from any Employee promptly upon receipt by Plaintiffs' counsel, and, in any event, within five days of receipt.

11. The Court, by approving this Order, is not conclusively determining that the persons who will receive notice are in fact similarly-situated to Plaintiffs under the FLSA; the parties may address this issue further following the close of

discovery. This Order is also not intended to in any way dispose of or address Plaintiffs' request in the Complaint for Rule 23 class certification with respect to Plaintiffs' state law claims; Plaintiffs may file at the close of discovery a motion for Rule 23 class certification, in which event Defendants may respond in opposition.

Rebecca Grady Jennings, District Judge
United States District Court

February 2, 2026

Cc: counsel of record

17